UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| TECHNOLOGY LENDING § <br> PARTNERS, LLC, *et al.* § <br> § <br>     Appellants, § <br> § <br> v. § <br> § <br> SAN PATRICIO COUNTY COMMUNITY § <br> ACTION AGENCY, *et al.* § <br> § <br>     Appellees. § | CIVIL ACTION NO. C-07-346 <br><br> CIVIL ACTION NO. C-07-237 |

**MEMORANDUM OPINION AND ORDER**

The appeals pending before this Court arise out of a settlement order approved by the bankruptcy court in *In re San Patricio County Community Action Agency*, No. C-05-20310 (Bankr. S.D. Tex. May 18, 2007), dismissing Appellants Technology Lending Partners, LLC's ("Technology Lending") and Nueces Financial Corporation's ("NFC" jointly "Appellants") claims and settling all claims against the Debtor's insurance policy. This Court previously dismissed Appellants' appeals as moot, (Dkt. No. 27)[1], a decision Appellants appealed to the United States Court of Appeals for the Fifth Circuit.

This case is back before the Court as a result of a remand from the Fifth Circuit. *In re San Patricio County Cmty. Action Agency*, 575 F.3d 553 (5th Cir. 2009). The Court must now determine whether Appellants' state-court actions were part of the bankruptcy estate, and thus, whether they were properly removed from state court by Trustee Michael B. Schmidt ("Trustee" or "Schmidt").

---

[1] Unless otherwise noted, all docket entries refer to case number 2:7cv237.

**Factual and Procedural History**

A detailed summary of the facts giving rise to these appeals appears in the Court's March 6, 2008, Order and the Fifth Circuit's July 14, 2009, Opinion. However, an overview of the facts in this case is appropriate.

Both Appellants filed separate tort suits in state court against Maria Guadalupe Paiz ("Paiz"), claiming negligent misrepresentation. (Dkt. No. 45, Ex. A); *see* (Dkt. No. 51, Exs. A & B). Paiz was an officer of Debtor San Patricio County Community Action Agency ("San Patricio" or "Debtor"). (Dkt. No. 45, Ex. A). Debtor is a non-profit agency that receives most, if not all, of its funding through government grants and provides services to the poor. (Dkt. No. 35 at 4-8). Paiz, on behalf of the Debtor, entered into a transaction with Appellants where the Appellants agreed to purchase vans from the Debtor and lease the vans back for the Debtor's continued use. (Dkt. No. 45, Ex. A); *see* (Dkt. No. 51, Exs. A & B); (Dkt. No. 35 at 17-22). This transaction permitted a loan of operating funds and the receipt of title to the vehicles as security. (Dkt. No. 35 at 17-22). Paiz represented to Appellants that the Debtor had the legal right to enter into these transactions. (Dkt. No. 45, Ex. A); *see* (Dkt. No. 51, Exs. A & B); (Dkt. No. 35 at 17-22). This litigation exists, however, because the government's loan of money to purchase the vans prohibited the Debtor from entering into a contract affecting the government's interest in the property. (Dkt. No. 45, Ex. A); *see* (Dkt. No. 51, Exs. A & B); (Dkt. No. 35 at 17-22).

Appellants limited the recovery they sought from Paiz in state court to the proceeds from the Debtor's liability insurance policy. *In re Paiz*, No. 2:5-20795 (Bankr. S.D. Tex.) (Dkt. Nos. 19 & 68). The policy, which was issued by St. Paul Fire and Marine Insurance Company ("St. Paul") and provided $1 million in benefits, was purchased pre-petition and covered claims

against Paiz, as a director of Debtor, in addition to claims against the Debtor. (Dkt. No. 7, Ex. 2). The policy language states that it will pay "Loss and Defense Costs" resulting from "Wrongful Act[s]" by the"Insured[s]." (Dkt. No. 7, Ex. 2). The insurance policy provides defense costs in addition to the liability limits. (Dkt. No. 7, Ex. 2).

After Appellants brought their state-court claims against Paiz, Paiz commenced her own personal bankruptcy proceeding. *In re Paiz*, No. 2:5-20795 (Bankr. S.D. Tex.). Appellants received approval from the bankruptcy court handling Paiz's bankruptcy to proceed in state court. *Id.* (Dkt. Nos. 19 & 68). However, the Trustee in the instant case intervened in both of Appellants' state-court cases on the same day and removed both cases against Paiz as adversary proceedings within the Chapter 7 liquidation of Debtor. *In re San Patricio County Cmty. Action Agency*, No. C-05-20310 (Bankr. S.D. Tex.) (Dkt. Nos. 169 & 170). The Debtor was not a party to either state-court action and had not been sued by Appellants or by Paiz.

After Appellants' tort actions were removed, Trustee asked the bankruptcy court to approve a settlement agreement that contained a provision precluding Appellants' claims against Paiz. (Dkt. No. 4, Ex. A). This settlement was funded entirely by the St. Paul policy and provided that the insurance company would provide $650,000 in exchange for the dismissal with prejudice of all claims against the policy—including Appellants' claims initially filed in state court. (*Id.*); (Dkt. No. 7, Ex. 2). In May 2007, the bankruptcy court approved the settlement agreement and specifically found that all of the proceeds of the Debtor's insurance policy were part of the bankruptcy estate. (Dkt. No. 4, Ex. A).

Appellants unsuccessfully opposed the settlement agreement. Their motion to stay the order approving the settlement agreement was denied. *Tech. Lending Partners LLC, et al. v. San Patricio County Cmty. Action Agency, et al.*, No. 2:7cv346 (S.D. Tex. Aug. 15, 2007) (Dkt.

3

No. 9, Ex. B).

With the settlement agreement approved, Schmidt next filed a motion for approval of an interim distribution agreement for the settlement proceeds. The bankruptcy court granted the motion. It approved a distribution agreement that gave $325,000, or half of the settlement, plus out-of-pocket expenses to Schmidt; more that $150,000 to the Texas Attorney General; and eventually left $118,961.06 to be distributed pro rata among approximately 50 unsecured creditors, including the Appellants.[2]  (Dkt. No. 47. Ex. D).

Appellants filed a motion to stay the interim distribution agreement, but they did not post a bond.  The motion was denied in August 2007, and the funds were distributed. *Tech. Lending Partners, LLC, et al. v. San Patricio County Cmty. Action Agency, et al.*, No. 2:7cv346 (S.D. Tex. Aug. 31, 2007) (Dkt. No. 9, Ex. D).

On March 6, 2008, this Court entered an Order dismissing the appeals as moot, since the Trustee had distributed all of the $650,000 settlement proceeds.  (Dkt. No. 27).  The Fifth Circuit disagreed and reversed and remanded the causes to this Court with instructions to decide the appeals on the merits.  Specifically, the Court must decide whether Appellants' state-law tort claims were part of the bankruptcy estate.  (Dkt. Nos. 41 & 42).

## Standard of Review

The standard of review for appeal from a bankruptcy court decision is to review findings of fact for clear error.  A finding of fact is clearly erroneous when, after considering all of the evidence, the reviewing court is "left with the definite and firm conviction that a mistake has

---

[2]After Debtor filed its petition in bankruptcy, Schmidt employed himself as attorney for the Trustee. Schmidt, as Trustee, also moved in the bankruptcy court to appoint himself as "special counsel" to represent the bankruptcy estate in proceedings involving the Debtor and its officers, directors, and employees.  (Dkt. No. 7, Ex. 5). The bankruptcy court granted the motion, which included a contingency fee schedule for Schmidt of a third of all money collected from settlement prior to trial, 45% of all money collected after trial, and half of all money collected after appeal. *Id.*

been made." *In re Young*, 995 F.2d 547, 548 (5th Cir. 1993). The Court reviews conclusions of law de novo. *In re Oxford Mgmt., Inc.*, 4 F.3d 1329, 1333 (5th Cir. 1993).

## Ownership of State-Court Actions

Determining whether Appellants' state-law tort claims were part of the bankruptcy estate involves two inquiries. First, the Court must determine whether the state-court actions were owned by Appellants or the bankruptcy estate. Second, the Court must determine whether the bankruptcy estate owned the insurance proceeds—as Appellants only sought recovery from the insurance proceeds in their tort actions against Paiz.

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *In re Educators Group Health Trust*, 25 F.3d 1281, 1283 (5th Cir. 1994) (quoting 11 U.S.C. § 541(a)(1)). "[A]ll legal or equitable interests" has been defined broadly to include causes of action. *Id.* (citing *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988). Accordingly, if a cause of action belongs to the bankruptcy estate, the trustee has exclusive standing to assert the claim. But, if a cause of action "belongs solely to the estate's creditors, the trustee has no standing to bring the cause of action." *Id.* at 1284.

Whether a particular state-law claim belongs to the bankruptcy estate depends on whether, under applicable state law, the debtor could have raised the claim as of the commencement of the case. *Id.* As part of this inquiry, a court looks to the nature of the injury for which relief is sought and considers the relationship between the debtor and the injury. *Id.*; *see In re E.F. Hutton Sw. Props. II, Ltd.*, 103 B.R. 808, 812 (Bankr. N.D. Tex. 1989) ("The injury characterization analysis should be considered as an inseparable component of whether an action belongs to the [estate] or [creditor]."). "If a cause of action alleges only indirect harm to a

5

creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *In re Educators Group Health Trust*, 25 F.3d at 1284 (citations omitted). "Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate." *Id.*

In *Educators Group*, the Fifth Circuit held that certain claims by a group of school districts relating to the alleged mismanagement of Educators Group Health Trust ("EGHT"), which filed for bankruptcy, such as claims that EGHT's third-party administrator's principals negligently managed EGHT and caused it to become insolvent, were property of the bankruptcy estate. *Id.* at 1284-85. The court reasoned that the claims alleged an injury to the school districts that derived from a direct injury to EGHT. *Id.* at 1285. However, the Fifth Circuit held that other claims, such as fraud, conspiracy to commit fraud, and misrepresentation, belonged solely to the school districts. *Id.* at 1286.

Debtor argues that the injury at issue here is Paiz's mismanagement and that Appellants' injuries, which Debtor characterizes as the non-payment of funds, derive from the harm to Debtor occasioned by the overspending of Debtor's funds and consequential loss of Debtor's grants. Accordingly, Debtor states that the Trustee has exclusive standing to pursue causes of action for misconduct, mismanagement, or neglect by Paiz.

However, Appellants' state-court tort claims allege that Paiz made *negligent misrepresentations* to Appellants. (Dkt. No. 45, Ex. A); *see* (Dkt. No. 51, Exs. A & B); (Dkt. No. 35 at 17-22). This is the same type of claim the Fifth Circuit found to belong solely to the creditor in *Educators Group*. The harm results from the misrepresentations made by Paiz to

Appellants, a harm only suffered by Appellants.  Accordingly, Appellants' state-law claims belong solely to Appellants.

Debtor also argues that Appellants' negligent misrepresentation claims are without merit under Texas law.  The Court will not address these arguments, as the merits of the state-law claims are not properly before the Court.

## Insurance Proceeds

As stated previously, "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *In re Educators Group Health Trust*, 25 F.3d 1281, 1283 (5th Cir. 1994) (quoting 11 U.S.C. § 541(a)(1)).  An insurance policy is considered property of the estate.  *In re Edgeworth*, 993 F.2d 51, 55 (5th Cir. 1993). "Insurance policies are property of the estate because, regardless of who the insured is, the debtor retains certain contract rights under the policy itself." *Id.*

Central to deciding this case is the apparent conflict between two Fifth Circuit cases involving insurance *proceeds*, *Vitek*, relied on by the Trustee, and *Edgeworth*, relied on by Appellants.  *Compare In re Vitek*, 51 F.3d 530 (5th Cir. 1995), *with Edgeworth*, 993 F.2d 51.

In *Edgeworth*, the Fifth Circuit discussed the distinction between ownership of an insurance policy and ownership of the proceeds.  The *Edgeworth* panel noted that "ownership of a policy 'does not inexorably lead to ownership of the proceeds.'"  *Edgeworth*, 993 F.2d at 55 (citing *In re Lousiana World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987)).  According to *Edgeworth*, to determine whether losses payable under insurance policies are property of a debtor's bankruptcy estate, the threshold question that must be answered is whether the debtor would have a right to receive and keep those proceeds when the insurer pays on a claim.  *Id.* at 56 ("In other words, when the debtor has no legally cognizable claim to the insurance proceeds,

7

those proceeds are not property of the estate."); *Landry v. Exxon Pipeline Co.*, 260 B.R. 769, 786 (Bankr. M.D. La. 2001).

For example, policies that cover fire, life, collision, and casualty insurance could have proceeds that might belong to the estate, assuming that the beneficiary of the policy is the debtor, because in those types of policies, the proceeds are intended to replace property that belonged to the estate. *Edgeworth*, 993 F.2d at 56; *Landry*, 260 B.R. at 789. Conversely, in the liability insurance context, a debtor "will not have a cognizable interest in the proceeds of the policy," because in ordinary circumstances, those proceeds are paid "only for the benefit of those harmed by the debtor under the terms of the insurance contract." *Edgeworth*, 993 F.2d at 56; *Landry*, 260 B.R. at 786.

The Trustee relies heavily on the opinion of the *Vitek* court for the proposition that the proceeds of a liability policy are property of the bankruptcy estate. *Vitek*, 51 F.3d at 534. In *Vitek*, the panel stated that the distinction between "ownership of liability *policies* and ownership of the *proceeds* of those policies has *not* been broadly applied: It arguably remains confined to cases involving [directors and officers] liability policies, given their unique nature among liability insurance products." *Id.* Accordingly, *Vitek* broadly implies that *proceeds* are always property of the estate.

However, the precedential value of *Vitek* is questionable, especially in light of the fact that the *Edgeworth* approach has been affirmed by the Fifth Circuit since *Vitek* was decided and the fact that *Vitek* warned readers against relying on the case outside of its narrow holding. *See In re Equinox Oil Co., Inc.*, 300 F.3d 614, 618-19 (5th Cir. 2002) ("The overriding question when determining whether proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When a payment by

the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate. In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate."); *In re Babcock & Wilson Co.*, 69 F. App'x 659 (5th Cir. 2003) (affirming *Edgeworth* approach); *Vitek*, 51 F.3d at 533 n.3 ("[T]he precedential—or even merely instructional—value of this opinion to future Chapter 11 cases should probably be 'little or none.'"); *Id.* at 538 n. 39 ("In again cautioning our readership against relying on this opinion as precedential or instructive beyond its narrow holding in the context of the particular facts and circumstances of this case . . . ."); *Landry v. Exxon Pipeline Co.*, 260 B.R. 769, 783-96 (Bankr. M.D. La. 2001) (explaining why *Edgeworth* is more persuasive than *Vitek*); *In re Sfuzzi, Inc.*, 191 B.R. 664, 666-68 (Bankr. N.D. Tex. 1996) (same). Moreover, the *Vitek* court's discussion of insurance proceeds did not provide the legal basis for the panel's decision. Instead, the case was decided on principles of Texas insurance law, so the court's discussion of insurance proceeds was dicta. *Id.* at 535-36.

Accordingly, the Court finds that *Edgeworth* is the governing authority in this Circuit. When *Edgeworth* is applied to the policy at issue here, Debtor has no legally cognizable claim to the insurance proceeds. The obligation of St. Paul is to pay claims asserted by parties such as Appellants. Further, the liability policy at issue is designed to insure against wrongful acts committed against third parties by the insureds, not to pay the Debtor for any claims it asserts, nor is it designed to replace any property lost by the bankruptcy estate. Accordingly, the bankruptcy estate does not own the *proceeds* of the liability policy at issue in this case.

**Conclusion**

Because the bankruptcy estate owned neither Appellants' state-court actions nor the insurance proceeds, Appellants' tort claims were improperly removed. Accordingly, the bankruptcy court's Order Granting Motion for Approval of Settlement Agreement is set aside.[3] Any other orders of the bankruptcy court that arose out of the Order Granting Motion for Approval of Settlement Agreement, and are contrary to this Court's Order, are also set aside. Appellants' state-court actions should be remanded to state court. These appeals are remanded to the bankruptcy court for further proceedings in conformity with this Memorandum Opinion and Order.[4]

It is so ORDERED.

Signed this 2nd day of September, 2010.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE

---

[3] Appellants suggest that they should be permitted to proceed against the $350,000 not paid by St. Paul under the policy, so as to avoid unwinding the settlement agreement. However, the Court does not view that as a feasible solution. St. Paul negotiated for the release of Appellants' claims. Accordingly, the only practical relief available to Appellants is to require the unwinding of the entire settlement. All creditors will be required to disgorge the settlement funds that have been distributed. The Court is aware that this will be complicated and, perhaps, impossible with respect to some creditors. This was part of the reason for the Court's ruling in its March 6, 2008, Order. (Dkt. No. 27).

[4] The Court need not address Appellants' arguments regarding the propriety of the settlement.